UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                                                **DECISION AND ORDER**
                                                                               10-CR-184S

ANTONIO BRIGGS, et al.,

               Defendants.

1.     Presently before this Court is Damian Ard's and Janelle Hawkins' objections to Magistrate Judge Hugh B. Scott's Report and Recommendation. (Docket No. 581.) No other Defendants lodged objections.

2.     Hawkins objects to the Report because it does not address her motion to suppress evidence seized under the authority of a search warrant for 118 Chestnut Street in Lockport, New York. Instead, Judge Scott found, "As stated in open court on January 22, 2013, Hawkins has abandoned motions for a <u>Franks</u> hearing or for a suppression hearing as to the search warrant of 118 Chestnut Street, Lockport." (R & R at 15.)

Hawkins contends that although she did waive the *hearing* on the motion to suppress, she did not abandon the motion itself, which, she urges, can be adjudicated without a hearing. The record from January 22, 2013 supports this representation:

> MR. CONNORS [Hawkins' attorney]: I've had several discussions with the assistant United States Attorney on this matter. We have reached an agreement that we are permitted to contest any of the legal issues with respect to the search warrant, and contest them based upon the discovery record and other matters that have been developed, or any other external evidence under those circumstances. Given that, we do not believe it would be necessary to have an evidentiary hearing in our case.
>
> THE COURT: All right.

> MS. BAUMGARTEN: And that specifically relates to the request. They're withdrawing the request for a Franks hearing, Judge.
>
> THE COURT: That's fine. All right. It's withdrawn. Okay. Thank you.

(2/22/13 Tr. at 82-83; Docket No. 582.)

This motion to suppress, however, was not addressed in the Report and Recommendation. This Court will, therefore, remand the matter for consideration before the Magistrate Judge.

\*\*\*\*

3. Defendant Ard objects to the Report on several grounds.

First, he contends that the government did not meet the sealing requirements of Title III. See 18 U.S.C. § 2518(8). The Report and Recommendation does not make any specific findings in this regard. This Court, however, finds that suppression is not warranted on this ground.

4. Section 2518(8) of Title 18 commands that "immediately upon the expiration of the period of the [wiretap] order, or extensions thereof, [] recordings shall be made available to the judge issuing such order and sealed upon his directions." Compliance with this statute is a prerequisite to admissibility. Id. The Second Circuit has established that any delay over two days triggers a requirement that the Government provide a satisfactory explanation for the delay. United States v. Vazquez, 605 F.2d 1269, 1274 (2d Cir. 1979); see also United States v. Ojeda Rios, 495 U.S. 257, 262–65, 110 S. Ct. 1845, 109 L. Ed. 2d 224 (1990) (establishing "satisfactory explanation" requirement). This explanation should be furnished at the time recordings are submitted for sealing, United States v.

Massino, 784 F.2d 153, 158 (2d Cir. 1986), but an explanation submitted at the time of a defendant's motion to suppress will be considered, United States v. Wong, 40 F.3d 1347, 1375 (2d Cir. 1994) (citing United States v. Pitera, 5 F.3d 624, 627 (2d Cir.1993)).

5. Here, the last pertinent recording occurred on the afternoon of March 11, 2011. (See Ex. F; Docket No. 524-4). The Assistant United States Attorney received the discs on March 15, 2013, and she scheduled the sealing with the Court on March 16, 2013. Ard contends that this "5-day" delay warrants total suppression.

This Court disagrees.

6. This Court signed the 30-day order authorizing the challenged wiretap on February 9, 2010. Interceptions began the next day. (See id.). Thus, the Government was authorized to conduct interceptions through and including Thursday, March 11, 2010. See 18 U.S.C. § 2518(5) ("[T]hirty-day period begins on the earlier of the day on which the investigative or law enforcement officer first begins to conduct an interception under the order or ten days after the order is entered."). As noted, the afternoon of March 11, 2010 marked the last interception recovered. According to the Government, the discs were then sent from New York City to Buffalo via overnight mail. The Government further represents that it received the discs on the following Monday and sealed them the next day.

7. As such, only two full business days elapsed between March 11 and March 16, 2010: Friday, March 13, and Monday, March 15. This is significant, as the Second Circuit has "recognized that weekends and holidays present legitimate obstacles to the sealing of tapes." Wong, 40 F.3d at 1375; see also United States v. Maxwell, 25 F.3d 1389, 1394 (8th Cir.1994) (not counting weekends); United States v. Carson, 969 F.2d 1480, 1498 (3rd Cir. 1992) (not counting weekends). Indeed, the Wong court discounted

3

Veterans Day in calculating elapsed time. Thus, even assuming, contrary to its own representation, that the Government received the discs in Buffalo late on Friday, the earliest it could have had them sealed was Monday. In the absence of any suggestion of bad faith, deliberate disregard of the statute, or tampering, see Wong, 40 F.3d at 1375, this Court does not find that such a minimal delay serves as legitimate basis for exclusion. Ard's motion on this ground is therefore denied.

8. Ard also asserts that the Government failed to comply with minimization directives of Title III. The Report and Recommendation notes this argument, but does not analyze it. Ard argues that the violations were so egregious as to warrant complete suppression of all the Title III evidence.

9. Title III provides that every court order authorizing a wiretap "shall contain a provision that the authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). Whether agents have complied with Title III's minimization requirements is evaluated through an "objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." Scott v. United States, 436 U.S. 128, 136, 98 S. Ct. 1717, 1723, 56 L. Ed. 2d 168 (1978). When the government is charged with a violation of the minimization statute, it must establish a prima facie case that its minimization efforts were reasonable. United States v. Magassouba, 433 F. App'x 10, 13 (2d Cir. 2011). If that burden is met, the burden then shifts to the Defendant, who must show that "substantial unreasonable interception of non-pertinent conversations occurred." United States v. Ianniello, 621 F. Supp. 1455, 1470 (S.D.N.Y. 1985).

10. Aggregating the numbers provided by the Government in their 10-day

Reports, which are summaries of minimization provided to the Court by the Government at ten day intervals while the wiretap is in effect, Ard notes that only 1.4% of calls marked non-pertinent by the agents were minimized. He notes that non-pertinent calls were minimized at similar rate as pertinent calls. And he points out that this Court has no indication as to the length of minimized calls. A call, in other words, could be minimized for only a short duration and it would still be marked "minimized." But that would be largely meaningless if the agents listened to most of a call while minimizing only a small portion of it.

11. The government objects to this calculation, noting that only an "aggrieved person" may seek suppression of wire communications intercepted by the Government. 18 U.S.C. § 2518(10)(a). The burden is on the person challenging the wiretap to demonstrate that he has an expectation of privacy in the interception. United States v. Montoya-Echevarria, 892 F. Supp. 104, 106 (S.D.N.Y. 1995) (citing United States v. Osorio, 949 F.2d 38, 40 (2d Cir. 1991)). And "[t]his expectation of privacy must be established by proof that the defendant's voice was intercepted by the Government." Id.; see also United States v. Bynum, 513 F.2d 533, 535 (2d Cir. 1975) (co-conspirators lack standing where their conversations were not intercepted). As such, Ard only has standing to object to interceptions made on his telephone or to which he was a party. Because Ard does not claim his voice was heard at all on the wire, he has standing to object to the minimization as it relates to those telephones that Ard has been identified as using. See United States v. Fury, 554 F.2d 522, 526 (2d Cir. 1977); United States v. Dellacroce, 625 F. Supp. 1387, 1394 (E.D.N.Y. 1986).

12. But even (1) considering only Ard's telephones, (2) eliminating the potential

problem with minimization length, and (3) considering only calls that last longer than two minutes, see e.g., United States v. Bynum, 485 F.2d 490, 501 (2d Cir.1973) (discounting calls under two minutes), the data presented in the 10-day reports still warrants further scrutiny.

13. Using the numbers provided in the 10-day reports, 188 calls over two minutes were completed on target telephone number 1. ("10 Day Report," Ex. A; Docket No. 531-1.)[1] Eleven were minimized and 90 were pertinent. Assuming that all the minimized calls were also non-pertinent calls (and that all calls are either pertinent or non-pertinent), these figures result in minimization of roughly 11% of the non-pertinent calls over two minutes.

14. For target telephone 2, 177 calls were completed, 33 were marked pertinent, and 36 were minimized. Making the same assumptions as above, this results in minimization of 25% of the non-pertinent calls over two minutes in length.

15. Ard also made 40 phone calls to his mother. All but one were marked non-pertinent. But it appears that Ard contends none of these calls were minimized. At some point, it *may* have become necessary to minimize known non-pertinent calls, then "spot check" for relevant conversation. See United States v. Ruggiero, 83 CR-412, 1987 WL 8194 (E.D.N.Y. Mar. 19, 1987) (act of "spot-checking" demonstrates reasonableness). Yet it is not clear if the Government performed this safeguard.

16. The Government suggests that the scope of the conspiracy at issue and the presence of coded language eases their burden to minimize. This is generally true, but the Government provides no authority for this Court to hold that these rates of minimization

---

[1] Though labeled a "10 Day Report," the time period identified in the report ranges from February 10, 2010 to March 11, 2010.

are *de jure* reasonable, and this Court is not prepared to so rule at this time. C.f <u>United States v. Parks</u>, 95 CR 510, 1997 WL 136761 (N.D. Ill. Mar. 24, 1997) (denying hearing where percentages of minimized, non-pertinent calls lasting longer than two minutes ranged from 50% to 93%); <u>Ianniello</u>, 621 F. Supp. at 1470 (denying hearing where 75% of calls were either minimized or under two minutes); <u>United States v. King</u>, 991 F. Supp. 77, 92 (E.D.N.Y. 1998) (same where 33% and 15% of *all* calls were minimized).

17. The Government repeatedly asserts that it complied with the requirements, but provides no real support for that assertion. It does not, for example, point to the procedures used by the agents to minimize or the policies used when labeling interceptions as pertinent or non-pertinent; there is no indication of what instructions they were given; what oversight they had; what the agents considered to be a "minimization;" or how long minimizations lasted.

18. This severely restricts this Court's ability to make a determination on whether the minimization was reasonable. Indeed, "[c]ourts in this circuit asked to determine whether agents have complied with the minimization requirement have 'looked to whether the agents devised a reasonable means of limiting interception, and whether they utilized the safeguards in good faith.'" <u>King</u>, 991 F. Supp. at 90 (internal citations omitted). Especially in light of the relatively low rates of minimization identified in the 10-day reports, this Court finds that further submissions are necessary to examine what means, if any, were employed by the agents to minimize privacy intrusion. See, e.g., <u>United States v. Goffer</u>, 756 F. Supp. 2d 588, 597 (S.D.N.Y. 2011) (discussing reasonableness of agents' minimization instructions); <u>United States v. Hinton</u>, 543 F.2d 1002, 1012 (2d Cir. 1976) (discussing procedure used to ascertain whether a conversation was pertinent to their

7

investigation or was a distinctly personal one); United States v. Torres, 908 F.2d 1417, 1423 (9th Cir. 1990) (types of measures used to reduce interceptions of conversations unrelated to criminal activity are highly relevant in determining reasonableness).

19. Accordingly, the government must submit:

- affidavits from those agents involved in the monitoring of the wiretap explaining what safeguards they undertook to ensure that minimization occurred, including but not limited to what, if any, efforts were made to "spot check" non-pertinent calls.

- instructions, if any, provided to the agents regarding minimization.

- available data indicating the duration of minimizations.

- any policies or procedures for minimization utilized by the agents.

- affidavit(s) explaining what supervision, if any, the agents received.

- Any other documentation the Government believes will aid this Court in making a determination on the reasonableness of the agent's minimization efforts.

20. The parties will then be permitted to submit briefs articulating their positions on minimization.

****

21. Ard raises several other objections to the Report and Recommendation. Having thoroughly reviewed the Report and Recommendation, those objections, and the applicable law, this Court accepts those Recommendations and rejects the objections.

****

IT HEREBY IS ORDERED, that Magistrate Judge Scott's Report and

Recommendation (Docket No. 581) is adopted in part and set aside in part, consistent with this Decision and Order.

FURTHER, in all respects except those relating to minimization, Defendant Ard's motion to suppress (Docket No. 518) is DENIED.

FURTHER, Ard's motion for severance (Docket No. 518) is DENIED as moot, and his motion to dismiss count 1 of the third superseding indictment (Docket No. 518) is DENIED.

FURTHER, that Defendant Woodward's (Docket No. 517) and Spencer's (Docket No. 514) motions to suppress are DENIED.

FURTHER, Defendant Beasley's motion (Docket No. 511) is DENIED.

FURTHER, Defendant Hawkins motion to suppress (Docket No. 515) is REMANDED for further consideration.

FURTHER, the Government must submit the materials identified in paragraph 19 of this Decision and Order by May 17, 2013.

FURTHER, supplemental briefing on the minimization issue will follow the following schedule: Government brief due May 24, 2013; Defendant Ard's brief due June 7, 2013. No reply briefs will be considered, and each brief is limited to 15 pages. No extensions will be granted.

Dated: May 2, 2013
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court